UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHANNON O'NEILL,<br><br>           Plaintiff,<br><br>    v.<br><br>NOBLE CORPORATION, ROBERT W. EIFLER, PAUL ARONZON, PATRICK J. BARTELS, JR., ALAN J. HIRSHBERG, ANN D. PICKARD, CHARLES M. SLEDGE, and MELANIE M. TRENT,<br><br>           Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Shannon O'Neill ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Noble Corporation ("Noble" or the "Company") and Noble's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of the Board's attempt to combine the Company with The Drilling Company of 1972 A/S ("Maersk Drilling").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading definitive proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on April 11, 2022. The Proxy recommends that Noble stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Noble merges with Maersk Drilling. The Proposed Transaction was first

1

disclosed on November 10, 2021, when Noble and Maersk Drilling announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Noble stock will be exchanged for one (1.00) share of the new holding company's common stock (the "Merger Consideration"). The deal is expected to close in mid-2022.

3. The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the financial projections prepared by Noble management, as well as the financial analyses conducted by Ducera Securities LLC ("Ducera"), Noble's financial advisor.

4. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the Proxy or otherwise causing an amendment to the Proxy to be disseminated to Noble's stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Noble's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Noble.

6. Defendant Noble is a corporation organized and existing under the laws of Cayman Islands. The Company's principal executive offices are located at 13135 Dairy Ashford, Suite 800, Sugar Land, Texas 77478. Noble common stock trades on NYSE under the ticker symbol "NE."

7. Defendant Robert W. Eifler has been President, CEO and a director of the Company

since 2020.

8. Defendant Paul Aronzon has been a director of the Company since April 2021.

9. Defendant Patrick J. Bartels, Jr. has been a director of the Company since February 2021.

10. Defendant Alan J. Hirshberg has been a director of the Company since February 2021.

11. Defendant Ann D. Pickard has been a director of the Company since February 2021.

12. Defendant Charles M. Sledge has been a director of the Company since February 2021. Defendant Sledge also serves as Chairman of the Board.

13. Defendant Melanie M. Trent has been a director of the Company since February 2021.

14. Defendants Eifler, Aronzon, Bartels, Hirshberg, Pickard, Sledge, and Trent are collectively referred to herein as the "Board."

15. Nonparty Maersk Drilling is a corporation organized and existing under the laws of Denmark. Maersk Drilling's principal executive offices are located at Lyngby Hovedgade 85, 2800 Kgs. Lyngby, Denmark.

**JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

17. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

18. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

**A. Background of the Company and the Proposed Transaction**

19. Noble provides offshore drilling services for oil and gas companies throughout the world. The Company's mobile offshore rigs are deployed to different regions based on customer needs. Noble's largest customers include Exxon Mobile Corporation, Royal Dutch Shell plc, and Saudi Arabian Oil Company.

20. On November 10, 2021, the Company entered into the Merger Agreement with Maersk Drilling.

21. According to the press release issued on November 10, 2021, announcing the Proposed Transaction:

> **Noble Corporation and Maersk Drilling announce agreement to combine**
>
> Sugar Land and Copenhagen, 10 November 2021 – Noble Corporation (NYSE: NE) ("Noble") and The Drilling Company of 1972 A/S (CSE: DRLCO) ("Maersk Drilling") today announced that they have entered into a definitive business combination agreement to combine in a primarily all-stock transaction. Following the completion of the transaction, the Maersk Drilling shareholders and Noble shareholders will each own approximately 50% of the outstanding shares of the combined company. The combined company will be named Noble Corporation and its shares will be listed on the New York Stock Exchange ("NYSE") and Nasdaq Copenhagen.
>
> Noble and Maersk Drilling share a very strong conviction about the compelling industrial logic for taking this step to create a differentiated offshore drilling company with the scale, capabilities, and resources to successfully serve a broad range of customers. The combined company will have a modern, high-end fleet of floaters and jackup rigs across benign and harsh environments able to meet the

needs of customers in the most attractive oil and gas basins. This transaction will unite and leverage the strong capabilities of Noble and Maersk Drilling, which both have decades of experience, differentiated value propositions, and unwavering commitments to best-in-class safety and service quality.

The combination is expected to generate estimated annual run-rate synergies of USD 125 million, which will create significant value for shareholders. The combined company will benefit from a diverse revenue mix, a robust contract backlog with significant earnings visibility, a solid balance sheet, and a strong free cash flow potential, supporting the potential for return of capital to shareholders while providing resiliency through the cycle.

The business combination agreement has been unanimously approved by the Boards of Directors of Noble and Maersk Drilling, and the transaction is also supported by Noble's top three shareholders, which collectively currently own approximately 53% of Noble shares, and APMH Invest A/S which currently owns approximately 42% of the share capital and votes of Maersk Drilling. In addition, certain foundations related to APMH Invest A/S, which currently own approximately 12% of the share capital and votes of Maersk Drilling, have expressed their intention to support the transaction.

Maersk Drilling's Chairperson of the Board of Directors, Claus V. Hemmingsen, said: *"This combination carries strong industry logic. With the combination we are creating a differentiated provider of offshore drilling services, which will be able to enhance the customer experience through increased scale, global reach, and industry-leading innovation. The combination will create value for all shareholders and will offer investors a unique opportunity to benefit from the market recovery, a robust financial position and strong free cash flow potential, all paving the way for the potential return of capital to shareholders."*

Noble's Chairperson of the Board of Directors, Charles M. (Chuck) Sledge, said: *"The combination of Noble and Maersk Drilling will create a leading offshore driller with global scale, a strong balance sheet and significant free cash flow generation potential. The transaction will be accretive to free cash flow per share, and I am confident that this combination will deliver meaningful value to all shareholders."*

**Strategic rationale**

The combination of Noble and Maersk Drilling is underpinned by a compelling strategic rationale for all stakeholders:

- **Creating a world class offshore driller:** The combined company will benefit from a modern, high-end fleet comprising of 20 floaters and 19 jackup rigs across benign and harsh environments, which will serve a broad portfolio of high quality, blue-chip customers.

- **Enhancing the customer experience**: The combination will bring together two complementary cultures with an unwavering commitment to best-in class safety performance and customer satisfaction. The combined company will be a leader and first-mover in innovation and sustainability.

- **Accretive to all shareholders:** The realization of the potential annual cost synergies of USD 125 million is expected to be front-loaded with the full potential to be realized within two years after closing of the transaction. The synergies are expected to be accretive to free cash flow per share. The combined company's scale will significantly enhance its cost-competitiveness.

- **Platform for strong cash flow generation and distribution:** The combined company is expected to have a normalized free cash flow potential of up to USD 375 million in 2023 and onwards with a highly attractive free cash flow yield potential, and additional cash flow growth stemming from the recovery of the international offshore drilling market. The balance sheet of the combined company will be best-in class with low net leverage and strong liquidity including a combined cash balance of approximately USD 900 million, providing resiliency through the cycle and allowing the combined company to focus on implementing a sustainable return of capital policy for shareholders.

**Pro-forma financials**

In the last twelve months ended September 2021, Noble and Maersk Drilling had combined pro-forma revenue of approximately USD 2.1 billion. As of 30 September 2021 (pro-forma for the asset divestitures announced by Noble and Maersk Drilling), the companies had a combined cash balance of approximately USD 900 million resulting in net debt of approximately USD 600 million with no newbuild capex commitments. As of 30 September 2021, the companies had revenue backlog of USD 2.4 billion (pro-forma for the asset divestitures).

**Leadership team**

Upon the closing of the transaction, Robert W. Eifler, Noble's President and Chief Executive Officer, will become President and Chief Executive Officer of the combined company and will be a member of the Board of Directors.

Commenting on the transaction, Robert W. Eifler stated, *"Both Noble and Maersk Drilling have many decades of history as leaders in the offshore drilling industry. I look forward to the future as these two great organizations come together to create a stronger combined company. Our shared passion for safety and operational performance will drive better service for our customers while delivering better potential returns to our investors."*

The combined company will have a seven-member Board of Directors with balanced representation from Noble and Maersk Drilling. Initially, the Board of Directors will be comprised of three directors designated by Noble, three directors designated by Maersk Drilling, and Robert W. Eifler. Charles M. (Chuck) Sledge will become chairman of the Board of Directors jointly appointed by Noble and Maersk Drilling. Claus V. Hemmingsen will be one of the three directors designated by Maersk Drilling.

The combined company will be headquartered in Houston, Texas, and will maintain a significant operating presence in Stavanger, Norway, to retain proximity to customers and support operations in the Norwegian sector and the broader North Sea, and to ensure continued access to talent.

**Transaction terms and structure**

The transaction will be implemented by way of (i) a merger of Noble with and into a wholly owned subsidiary of Noble Finco Limited, a private limited company formed under the laws of England and Wales and an indirect, wholly owned subsidiary of Noble ("Topco"), and (ii) a Danish voluntary tender exchange offer by Topco to Maersk Drilling shareholders. In connection with the merger, (x) each outstanding Noble share and penny warrant will be converted into the right to receive one share of Topco, and (y) each issued tranche 1, tranche 2 and tranche 3 warrant will be converted into a warrant to purchase one share of Topco. Additionally, pursuant to the exchange offer, Maersk Drilling shareholders may exchange each Maersk Drilling share for 1.6137 Topco shares, and will in lieu of their entitlement to certain Topco shares have the ability to elect cash consideration for up to USD 1,000 of their Maersk Drilling shares (payable in DKK), subject to an aggregate cash consideration cap of USD 50 million (excluding any cash paid for fractional shares). Pursuant to the terms of the business combination agreement, upon closing of the transaction, the Maersk Drilling shareholders and the Noble shareholders will each own approximately 50% of the outstanding shares of Topco, and those shares will be listed on both the NYSE and Nasdaq Copenhagen. The approximate 50% ownership percentage of the Maersk Drilling and Noble shareholders is calculated using 66.6 million shares for Noble shareholders (which includes approximately 6.5 million penny warrants and excludes dilution from outstanding warrant tranches and share based compensation plans) and assumes that all Maersk Drilling shares are tendered in the exchange offer for shares.

The transaction is subject to Noble shareholder approval, acceptance of the exchange offer by holders of at least 80% of Maersk Drilling shares, merger clearance and other regulatory approvals, listing on the NYSE and Nasdaq Copenhagen, and other customary conditions. The transaction is targeted to close in mid-2022.

### B. The Materially Incomplete and Misleading Proxy

22. On April 11, 2022, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

*Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

23. The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of Ducera's fairness opinion, Ducera reviewed "certain non-public projected financial data relating to Noble prepared and furnished to Ducera by management of Noble." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Noble's management provided to the Board and Ducera.

24. Notably, the Proxy failed to disclose the line items underlying the calculation of Adjusted EBITDA, Unlevered Free Cash Flow, Average Utilization, and Average Dayrate for Noble Case A and Noble Case B. The Proxy also fails to disclose the line items underlying the calculation of Adjusted EBITDA, Unlevered Free Cash Flow, Average Utilization and Average Dayrate for Noble's projections for Maersk Drilling Case A and Noble's projections for Maersk Drilling Case B. In addition, the Proxy fails to disclose the line items underlying the calculation of EBITDA, Unlevered Free Cash Flow, Average Utilization and Average Dayrate for the Maersk Drilling projections and the Maersk Drilling's projections for Noble. This omitted information is

necessary for Plaintiff to make an informed decision on whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning Ducera's Financial Analyses*

25. With respect to the *Selected Companies Analysis—Noble,* the Proxy fails to disclose the implied values per rig for each selected company. The Proxy also fails to disclose net debt of Noble as of September 30, 2021. The Proxy further fails to disclose the estimated value of Noble's remaining value of firm contract backlog as of September 30, 2021. In addition, the Proxy fails to disclose the dilution from warrants and the inputs and assumptions underlying the calculation of the dilution. Finally, the Proxy fails to disclose the sale proceeds received from Noble's recent transaction with ADES International Holding.

26. With respect to the *Useful Life Discounted Cash Flow Analysis—Noble,* the Proxy fails to disclose the unlevered free cash flow utilized in the analysis, as well as the line items underlying the calculation of the unlevered free cash flow. The Proxy also fails to disclose the inputs and assumptions underlying the selection of the discount rates of 9.5% to 11.5%. In addition, the Proxy fails to disclose the Company's net debt as of September 30, 2021. The Proxy further fails to disclose the dilution from warrants and the inputs and assumptions underlying the calculation of the dilution.

27. With respect to the *5-Year Discounted Cash Flow Analysis—Noble,* the Proxy fails to disclose the unlevered free cash flow for fourth quarter of fiscal year 2021 through fiscal year 2026 as utilized in the analysis, as well as the line items underlying the calculation of the unlevered free cash flow. The Proxy also fails to disclose the inputs and assumptions underlying the selection of the discount rates of 9.5% to 11.5%. In addition, the Proxy fails to disclose the calculated terminal values.

28. With respect to the *Selected Companies Analysis—Maersk Drilling,* the Proxy fails to disclose the implied values per rig for each selected company. The Proxy also fails to disclose net debt of Maersk Drilling as of September 30, 2021. The Proxy further fails to disclose the estimated value of Maersk Drilling's remaining value of firm contract backlog as of September 30, 2021. Finally, the Proxy fails to disclose the sale proceeds received from Maersk Drilling's recent transaction with Havila Sirius.

29. With respect to the *Useful Life Discounted Cash Flow Analysis—Maersk Drilling,* the Proxy fails to disclose the unlevered free cash flow utilized in the analysis, as well as the line items underlying the calculation of the unlevered free cash flow. The Proxy also fails to disclose the inputs and assumptions underlying the selection of the discount rates of 9.5% to 11.5%. In addition, the Proxy fails to disclose Maersk Drilling's net debt as of September 30, 2021.

30. With respect to the *5-Year Discounted Cash Flow Analysis—Maersk Drilling,* the Proxy fails to disclose the inputs and assumptions underlying the selection of the discount rates of 9.5% to 11.5%. In addition, the Proxy fails to disclose the calculated terminal values.

31. The Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

32. Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

33. Further, the Proxy indicates that on November 9, 2021, Ducera reviewed with the

Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view to Noble stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Ducera's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

34. Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that she will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Defendants have filed the Proxy with the SEC with the intention of soliciting Noble stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

37. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Noble, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; and (ii) the value of Noble shares and the financial analyses performed by Ducera in support of its fairness opinion.

40. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Ducera reviewed and discussed its financial analyses with the Board during various meetings including on November 9, 2021, and further states that the Board considered Ducera's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

41. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Noble within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Noble and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

46. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the Proxy with the SEC or otherwise disseminating an amendment to the Proxy to Noble stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 27, 2022                                **ROWLEY LAW PLLC**

                                                     *S/ Shane T. Rowley*
                                                     Shane T. Rowley (SR-0740)
                                                     Danielle Rowland Lindahl
                                                     50 Main Street, Suite 1000
                                                     White Plains, NY 10606
                                                     Tel: (914) 400-1920
                                                     Fax: (914) 301-3514
                                                     Email: srowley@rowleylawpllc.com
                                                     Email: drl@rowleylawpllc.com

                                                     *Attorneys for Plaintiff*